eFiled
7/25/2026 2:54 PM
Superior Court
of the District of Columbia

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

**JANENE BLOW**                                                :
220 20th Street South, Apt. 703
Arlington, Virginia 22202

                                                               :

Plaintiff,

v.                                                             :     Civil Action No. _2026-CAB-005183_

**WHOLE FOODS MARKET GROUP, LLC**
c/o Corporation Service Company                                :
1156 15ᵗʰ Street NW, Suite 605
Washington, DC 20005

And                                                            :

**AMAZON.COM, INC.**, if appropriate after                     :
discovery,

Defendants.                                                    :

## COMPLAINT

Plaintiff Janene Blow, by counsel, brings this action against Defendant Whole Foods Market Group, Inc. ("Whole Foods"), and alleges as follows:

## INTRODUCTION

1. This is an action for damages arising from a preventable slip-and-fall occurring inside Defendant's Whole Foods grocery store located at 967 Florida Avenue, N.W., Washington, D.C. 20001, on July 27, 2023.

2. Plaintiff was lawfully upon Defendant's premises as a business invitee.

3. Within only a few steps after entering the front entrance of the store, Plaintiff encountered an accumulation of water on the floor that Defendant failed to remove, barricade, or warn customers about.

4. Plaintiff unexpectedly slipped on the water, violently fell, and sustained serious and permanent injuries.

5. Defendant knew or, through the exercise of reasonable care, should have known that the dangerous condition existed before Plaintiff's fall.

6. Defendant failed to exercise reasonable care to inspect its premises, discover hazardous conditions, remove hazardous conditions, or adequately warn customers of those hazards.

7. As a direct and proximate result of Defendant's negligence, Plaintiff has undergone years of medical treatment, extensive physical therapy, diagnostic testing, orthopedic evaluations, injections, prescription medication, bracing, and is scheduled to undergo major knee surgery after conservative treatment failed.

## PARTIES

8. Plaintiff Janene Blow is an adult resident of Arlington, Virginia.

9. At all relevant times Plaintiff was a lawful customer and business invitee at Defendant's Whole Foods store.

10. Defendant Whole Foods Market Group, Inc. is a corporation authorized to transact business within the District of Columbia and owned, operated, managed, possessed, controlled, maintained and/or was otherwise responsible for the Whole Foods grocery store located at 967 Florida Avenue, N.W., Washington, D.C.

11. At all relevant times Defendant, through its officers, managers, employees, servants and agents, exercised possession and control over the premises.

12. Whenever reference is made to Defendant, such allegation includes its officers, directors, managers, agents, employees and all persons acting within the scope of their employment.

13. The identities of additional persons or entities responsible for inspection, maintenance, janitorial services, or floor safety are presently unknown and will be added through amendment if discovery reveals their responsibility.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to D.C. Code § 11-921.

15. Venue is proper because the incident occurred in the District of Columbia and Defendant conducts business within the District.

## FACTUAL ALLEGATIONS

17. On July 27, 2023, Plaintiff entered Defendant's Whole Foods grocery store located at 967 Florida Avenue, N.W.

18. Plaintiff entered through the store's primary public entrance.

19. Plaintiff intended to shop for groceries.

20. Plaintiff was lawfully upon the premises.

21. Plaintiff was a business invitee to whom Defendant owed the highest duty of reasonable care recognized under District of Columbia premises liability law.

22. Defendant invited members of the public, including Plaintiff, to enter the premises for Defendant's commercial benefit.

23. Defendant therefore owed Plaintiff a duty to maintain reasonably safe walking surfaces.

24. Defendant further owed Plaintiff a duty to conduct reasonable inspections of areas where customers were expected to walk.

25. Defendant owed Plaintiff a duty to discover unsafe conditions within a reasonable period of time.

26. Defendant owed Plaintiff a duty either to remove dangerous conditions or adequately warn invitees of their existence.

27. After entering the store, Plaintiff proceeded forward only approximately four steps.

28. Before Plaintiff had any reasonable opportunity to perceive a hazard, her foot encountered a clear accumulation of water located on the walking surface immediately inside the front entrance.

29. The water was located in an area designated for customer ingress.

30. Customers entering the store were expected to traverse this area.

31. Defendant knew that hundreds of customers routinely entered through this entrance each day.

32. Defendant likewise knew that any liquid present on the smooth walking surface immediately inside the entrance created a significant slipping hazard.

33. No cones, barricades, caution tape, warning signs, mats, or other warnings were present before Plaintiff encountered the water.

34. The hazardous condition was not open and obvious to Plaintiff.

35. Plaintiff exercised ordinary care for her own safety.

36. Plaintiff was looking ahead in the direction she was walking.

37. Plaintiff had no reason to anticipate that water would be present on the floor immediately inside Defendant's grocery store.

38. Plaintiff suddenly slipped.

39. She lost her footing.

40. She violently fell to the floor.

41. The fall occurred without warning.

42. Plaintiff immediately experienced significant pain.

43. A security officer positioned near the entrance witnessed the incident.

44. Store employees responded after Plaintiff fell.

45. Defendant's manager came to Plaintiff's assistance.

46. Defendant prepared an incident report documenting the occurrence.

47. Defendant assisted Plaintiff following the fall.

48. After Plaintiff had already fallen, Defendant placed a wet-floor warning sign in the area where Plaintiff slipped.

49. The placement of the warning sign after the incident demonstrates that Defendant recognized the presence of the hazardous condition.

50. The incident was captured by Defendant's surveillance camera system.

51. Prior to Plaintiff's fall, Defendant either created the dangerous condition or had actual notice of it.

52. Alternatively, Defendant had constructive notice because the condition existed for a sufficient period of time that it would have been discovered through reasonable inspections.

53. The dangerous condition existed in the immediate entrance area of the store.

54. The entrance area is among the highest pedestrian traffic locations within the premises.

55. Defendant knew customers continuously entered through this location.

56. Reasonable care required Defendant to inspect this area frequently.

57. Reasonable care required Defendant to monitor the entrance for spills and slipping hazards.

58. Reasonable care required Defendant to promptly remove accumulations of water.

59. Reasonable care required Defendant to immediately warn customers until the condition could be removed.

60. Defendant failed to perform one or more of these duties.

61. If Defendant contends it lacked actual knowledge of the condition, such lack of knowledge resulted from Defendant's failure to implement or follow reasonable inspection procedures.

62. Had Defendant exercised ordinary care in inspecting the entrance area, the water would have been discovered before Plaintiff encountered it.

63. Defendant either failed to inspect the area or failed to conduct inspections with reasonable frequency.

64. Defendant either failed to discover the hazard or failed to timely remedy it after discovery.

65. Defendant knew or should have known that allowing water to remain on a polished grocery store floor created an unreasonable risk of harm to customers.

66. Defendant nevertheless permitted customers to continue entering the store without warning.

67. Defendant maintained the area immediately inside the front entrance of the store for use by customers entering and exiting the premises.

68. Defendant knew that the entrance area was one of the highest pedestrian traffic areas within the store.

69. Defendant knew that customers entering through the front entrance were required to walk through the location where Plaintiff fell.

70. Defendant knew that liquids present upon the smooth floor surface created an unreasonable and foreseeable risk that customers would slip and sustain serious bodily injury.

71. Defendant therefore had a duty to exercise heightened vigilance in monitoring, inspecting, and maintaining the entrance area.

72. Defendant knew that hazardous conditions occurring in the entrance area required immediate attention because of the continuous flow of customers entering the premises.

73. Upon information and belief, Defendant maintained policies and procedures requiring employees to routinely inspect customer walking surfaces for spills, water, and other slipping hazards.

74. Upon information and belief, Defendant required employees to promptly remove hazardous conditions once discovered.

75. Upon information and belief, Defendant required employees to immediately place warning devices whenever a hazardous condition could not immediately be removed.

76. Upon information and belief, Defendant maintained surveillance cameras directed toward the entrance area for purposes that included customer safety, loss prevention, and documenting events occurring within the store.

77. Upon information and belief, Defendant maintained inspection procedures intended to identify hazardous conditions before customers encountered them.

78. Plaintiff alleges that Defendant failed to follow one or more of its own inspection, maintenance, or safety procedures on the date of the occurrence.

79. Alternatively, if Defendant contends that no inspection procedures existed, Defendant negligently failed to implement reasonable inspection procedures for one of the most heavily traveled customer areas within the premises.

80. Upon information and belief, one or more Defendant employees were assigned responsibilities that included monitoring customer safety within or near the entrance area.

81. Upon information and belief, one or more Defendant employees were working in or near the entrance area before Plaintiff's fall.

82. The accumulation of water existed for a sufficient period of time that Defendant, through the exercise of reasonable care, should have discovered and removed it before Plaintiff encountered it.

83. Alternatively, if Defendant contends that the water had only recently accumulated, Plaintiff alleges that Defendant or its employees created the dangerous condition through their own acts or omissions.

84. Alternatively, Plaintiff alleges that Defendant or its employees had actual knowledge of the presence of the water before Plaintiff fell but failed to remove it or warn customers.

85. Alternatively, Plaintiff alleges that Defendant's inspection procedures were so infrequent, inadequate, or negligently performed that hazardous conditions routinely could exist without timely detection.

86. Defendant either created the dangerous condition, knew of the dangerous condition, or would have discovered the dangerous condition through the exercise of reasonable care.

87. Regardless of which alternative theory is ultimately established through discovery, Defendant failed to exercise the degree of care required of a reasonably prudent retail establishment under the circumstances.

88. Following Plaintiff's fall, Defendant's employees responded to the scene, rendered assistance, prepared an incident report, and placed a wet-floor warning sign in the area where Plaintiff fell. Plaintiff's demand materials describe that the warning sign was placed after the fall, supporting the inference that the hazard existed at the location of the incident.

89. Upon information and belief, Defendant's surveillance system recorded the condition of the floor before, during, and after Plaintiff's fall, as well as the response of Defendant's employees.

90. Defendant possesses, or possessed, information uniquely within its control concerning:

    a. when the water first appeared;

    b. how the water came to be on the floor;

    c. whether employees observed the condition before Plaintiff fell;

    d. the timing and frequency of inspections performed that day;

    e. the identities of employees working near the entrance;

f. surveillance video depicting the incident;

g. incident reports prepared after the fall;

h. communications among employees concerning the incident; and

i. maintenance and inspection records for the premises.

91. These matters are peculiarly within Defendant's knowledge and will be established through discovery.

## COUNT I – NEGLIGENCE

92. Plaintiff incorporates by reference Paragraphs 1 through 91 as though fully set forth herein.

93. At all relevant times, Defendant owed Plaintiff the duty to exercise reasonable care in maintaining its premises in a reasonably safe condition for business invitees.

94. Defendant owed Plaintiff a duty to use reasonable care to inspect its premises for hazardous conditions.

95. Defendant owed Plaintiff a duty to discover dangerous conditions that existed upon the premises.

96. Defendant owed Plaintiff a duty to remove dangerous conditions within a reasonable time after discovery.

97. Defendant owed Plaintiff a duty to warn of dangerous conditions that Defendant knew or reasonably should have known existed.

98. Defendant owed Plaintiff a duty to maintain reasonably safe walking surfaces for customers entering the store.

99. Defendant knew that customers necessarily traversed the area immediately inside the front entrance.

100. Defendant knew that customers' attention would naturally be directed toward entering the store, obtaining shopping carts, avoiding other patrons, and proceeding into the sales floor.

101. Defendant therefore knew that accumulations of water on the entrance floor created a substantial risk of serious injury.

102. Defendant breached its duties owed to Plaintiff by, among other acts and omissions:

a. permitting water to remain on the floor;

b. creating and/or allowing a dangerous condition to exist;

c. failing to discover the dangerous condition through reasonable inspection;

d. failing to conduct inspections at reasonable intervals;

e. failing to implement reasonable inspection procedures;

f. failing to follow its own inspection and safety procedures;

g. failing to remove the water within a reasonable period of time;

h. failing to dry the walking surface;

i. failing to barricade the hazardous area;

j. failing to place warning signs before Plaintiff encountered the hazard;

k. placing a warning sign only after Plaintiff had already fallen;

l. permitting customers to traverse a known hazardous area;

m. failing to adequately supervise employees responsible for floor inspections;

n. failing to properly train employees regarding spill detection and remediation;

o. failing to maintain the premises in a reasonably safe condition;

p. failing to exercise reasonable care under the circumstances; and

q. committing such additional negligent acts as discovery may reveal.

103. At the time Plaintiff fell, Defendant either:

a. created the dangerous condition;

b. actually knew the dangerous condition existed; or

c. should have known of its existence through the exercise of reasonable care.

104. Alternatively, if Defendant denies actual knowledge, the hazardous condition remained on the floor long enough that Defendant, through reasonable inspection procedures, should have discovered and remedied it before Plaintiff encountered it.

105. The dangerous condition existed in one of the most heavily traveled customer areas within the premises.

106. Reasonable inspections would have revealed the presence of the water.

107. Defendant's failure to discover and remove the hazard constituted negligence.

108. Defendant's negligence was a direct and proximate cause of Plaintiff's injuries.

109. Immediately following the fall, Plaintiff experienced severe pain in her left knee, back, and hand.

110. The following morning, Plaintiff sought treatment at an urgent care facility because of persistent pain. Plaintiff's treatment history is described in the materials she provided to the insurer.

111. Plaintiff thereafter underwent extensive diagnostic testing, including x-rays, MRI studies, and CT imaging.

112. Plaintiff underwent numerous orthopedic evaluations.

113. Plaintiff participated in extensive physical therapy.

114. Plaintiff required prescription medication.

115. Plaintiff required a specialized knee brace.

116. Plaintiff underwent injections and other conservative treatment.

117. Plaintiff sought multiple orthopedic opinions in an effort to avoid surgery.

118. Conservative treatment failed to resolve her injuries.

119. Plaintiff continues to suffer instability of the patella, pain, and functional limitations.

120. Plaintiff has been advised that surgical intervention is necessary after years of unsuccessful conservative management, as reflected in the demand package.

121. Plaintiff's injuries have substantially interfered with her daily activities.

122. Plaintiff experiences difficulty walking, standing, climbing stairs, kneeling, exercising, traveling, and engaging in ordinary recreational activities. These limitations are described in her demand materials.

123. Plaintiff has incurred substantial medical expenses.

124. Plaintiff will continue to incur future medical expenses.

125. Plaintiff has sustained lost income and diminished earning capacity.

126. Plaintiff has suffered physical pain.

127. Plaintiff has suffered mental anguish.

128. Plaintiff has suffered emotional distress.

129. Plaintiff has suffered inconvenience.

130. Plaintiff has suffered embarrassment.

131. Plaintiff has suffered loss of enjoyment of life.

132. Plaintiff has suffered permanent injury.

133. Plaintiff has suffered permanent impairment.

134. Plaintiff will continue to experience these damages in the future.

135. Defendant created an incident report concerning Plaintiff's fall.

136. Defendant possessed surveillance video depicting the incident according to Plaintiff's account.

137. Employees and management investigated the incident immediately after it occurred.

138. Defendant therefore had actual knowledge of the incident and of the existence of relevant evidence.

139. Plaintiff expects Defendant to preserve all surveillance video, incident reports, inspection logs, cleaning logs, employee schedules, training records, maintenance records, electronic communications, photographs, witness statements, and all other evidence relating to the occurrence.

140. Plaintiff reserves the right to seek all appropriate relief should discoverable evidence have been destroyed, altered, or lost after Defendant became aware of Plaintiff's claim.

141. As a direct and proximate result of Defendant's negligence, Plaintiff has sustained damages including, but not limited to:

   a. past medical expenses;

   b. future medical expenses;

   c. future surgical expenses;

   d. future rehabilitation expenses;

   e. physical therapy expenses;

   f. prescription medication expenses;

   g. travel and mileage expenses;

   h. lost wages;

   i. loss of earning capacity;

   j. pain and suffering;

   k. mental anguish;

   l. emotional distress;

   m. inconvenience;

n. loss of enjoyment of life;

o. permanent injury;

p. permanent impairment;

q. pre-judgment and post-judgment interest as permitted by law;

r. costs of this action; and

s. all other damages recoverable under District of Columbia law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Janene Blow respectfully requests that this Court enter judgment in her favor and against Defendant Whole Foods Market Group, Inc., and award:

A. Compensatory damages in an amount to be determined by the jury but believed to exceed the jurisdictional minimum of this Court;

B. Past and future medical expenses;

C. Past and future lost earnings and impairment of earning capacity;

D. Compensation for pain, suffering, inconvenience, emotional distress, and loss of enjoyment of life;

E. Costs of suit;

F. Pre-judgment and post-judgment interest as permitted by law; and

G. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

THE LAW OFFICES OF JAMES C. JARMAN III

By: _____

James C. Jarman III (D.C. Bar No. 482060)
2022 Yorktown Rd. NW
Washington, DC 20012
240 240 9445 Tel
202 449 9673 Fax
jjarmanlaw@gmail.com
*Counsel for Plaintiff*